No. 51,549

STATE OF KANSAS, *Plaintiff-Appellant,* v. JACK LEROY FISH, *Defendant-Appellee.*

(612 P.2d 180)

Opinion
filed June 14, 1980.

*Geary N. Gorup,* county attorney, was on the brief for the appellant.
No appearance for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal by the State on a question reserved pursuant to K.S.A. 1979 Supp. 22-3602(*b*)(3). The defendant, Jack Leroy Fish, was charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of K.S.A. 1979 Supp. 8-1567 which provides in part as follows:

"8-1567.   Driving while under influence of intoxicating liquor or drugs; penalties; revocation or restriction of driver's license; order placing conditions on license.

"(*a*)   It is unlawful and punishable as provided in subsection (*c*) of this section for any person who is under the influence of intoxicating liquor *to operate* any vehicle within this state.

"(*b*)   It is unlawful and punishable as provided in subsection (*c*) of this section for any person who is an habitual user of or under the influence of any narcotic, hypnotic, somnifacient or stimulating drug or who is under the influence of any other drug to a degree which renders such person incapable of safely driving a vehicle *to drive* a vehicle within this state. The fact that any person charged with a violation of this subsection is or has been entitled to use such drug under the laws of this state shall not constitute a defense against any charge of violating this subsection." (Emphasis supplied.)

The question reserved and presented for determination requires a construction of the term "to operate" as used in section (*a*) of 8-1567. Simply stated the question propounded by the State is this: Is it a violation of K.S.A. 1979 Supp. 8-1567(*a*) for an intoxicated person to be in a motor vehicle with the motor running where there is no evidence, direct or circumstantial, that he drove the motor vehicle in that condition?

For the purpose of determining the question reserved, the facts are to be considered as undisputed. On the morning of March 10,

1979, defendant Fish was found in his motor vehicle parked off the highway at a community trash receptacle in Butler County by a citizen named Edgar Thiessen. Thiessen noticed that the windows were rolled up and that the defendant, the only occupant of the car, appeared to be asleep on the front seat. The motor was running with the gear shift of the car in "park." There was an open liquor bottle in the front seat. Thiessen tried, but was unable to arouse the defendant. Thiessen then turned off the ignition, left the car door ajar, and notified the highway patrol. Highway patrol trooper Hannah responded to the call. He awoke the defendant and requested his driver's license. Hannah noticed the difficulty defendant had in producing his driver's license and immediately suspected him of intoxication. Defendant was then arrested and later charged with operating a motor vehicle while under the influence of intoxicating liquor under K.S.A. 1979 Supp. 8-1567(a). We will assume that the evidence was sufficient to establish the defendant's state of intoxication. The State concedes that there is no evidence in the record to show that, at the time the defendant was observed by Thiessen and Hannah, he was driving (or moving) the car. Furthermore, there is no evidence that after he drank liquor at the trash receptacle, the defendant drove the vehicle. Assuming that the words "operating" and "driving" are synonymous and that some movement of the vehicle while under the defendant's control is needed to prove driving, the State concedes that the evidence in the case would not be sufficient to prove a violation of K.S.A. 1979 Supp. 8-1567(a).

On this appeal, the State requests this court to hold that there is a distinction between the terms "to operate" and "to drive" as used in K.S.A. 1979 Supp. 8-1567(a) and (b). The State maintains that the word "operate" is a broader term than is the term "drive" and includes acts of a person in a motor vehicle not involving the actual driving of the vehicle. Thus, the State argues, an intoxicated person, who starts the motor of an automobile and, thereafter, remains seated in the vehicle, has violated the provisions of K.S.A. 1979 Supp. 8-1567(a). The State points out there is no Kansas law defining the term "to operate" in the context of this statute. There are Kansas cases which discuss the term "driving" as used in the former statute, G.S. 1949, 8-530. The Kansas cases on the subject have assumed that proof of driving or movement of

the vehicle is required in order to sustain a conviction. In *State v. Hazen,* 176 Kan. 594, 272 P.2d 1117 (1954), the issue before the court was the sufficiency of the evidence to support the jury's conclusion that the defendant had driven the automobile while under the influence of intoxicating liquor. In *Hazen,* the defendant was found in a slumped position in the driver's seat and appeared to be in a daze. The automobile was parked in the center of the right-hand lane of traffic with the motor and lights turned off. While there was no direct evidence that the intoxicated defendant had driven the vehicle, the court reasoned that it could be inferred the defendant drove the car to the spot where it was found, since the vehicle was standing in the middle of the highway. For a similar case, see *State v. Dill,* 182 Kan. 174, 319 P.2d 172 (1957).

In other jurisdictions, statutes prohibiting "driving" under the influence of intoxicating liquor have generally been held applicable only in cases in which it is shown that the accused placed the vehicle in motion. Statutes which prohibit "operating" a motor vehicle under the influence of intoxicating liquor have generally been more liberally interpreted to include not only the act of driving but also such acts as starting the engine or activating the electrical or mechanical devices of the vehicle. There is an excellent annotation on the subject in 93 A.L.R.3d 7, where cases on the subject are discussed in depth and the various positions of the courts are analyzed. Some jurisdictions give a broad interpretation to the term "operating" so as to cover all matters and things connected with the purpose and use of motor vehicles on the highways, whether they be in motion or at rest. At the other extreme are jurisdictions which hold that "operating" is synonymous with "driving" and require some actual movement of the vehicle.

Prior to 1971, Kansas statutes prohibited both habitual users of narcotic drugs and persons under the influence of intoxicating liquor to *drive* any motor vehicle within the state. See K.S.A. 8-530 (Corrick). In 1974 the legislature adopted the Uniform Act Regulating Traffic on Highways (K.S.A. 8-1401 *et seq.*). K.S.A. 8-530 (Corrick) was repealed in favor of K.S.A. 1979 Supp. 8-1567, which made it unlawful to *operate* any vehicle while under the influence of intoxicating liquor and also made it unlawful for any person under the influence of drugs to *drive* a

vehicle. It is the position of the State that the change in wording from "drive" to "operate" indicates a legislative intent to broaden the coverage of the act to make it a crime for an intoxicated person to turn on the car's engine, thus eliminating any requirement that the vehicle must actually be moved or driven by the intoxicated person.

At first blush, the argument of the State appears to be sound. Our problem, of course, is to determine the legislative intent. In determining legislative intent, we deem it desirable to consider together the various provisions of the Uniform Act Regulating Traffic on Highways (K.S.A. 8-1401 through 8-2204). From our analysis of these provisions and an examination of Chapter 50 of the Laws of 1976 which last amended 8-1567, we have concluded that the legislature intended the words "operate" and "drive" to be considered as synonymous terms as used in K.S.A. 1979 Supp. 8-1567. In arriving at this conclusion we have taken into consideration the following sections of the Uniform Act Regulating Traffic on Highways: K.S.A. 1979 Supp. 8-1005 provides in part as follows:

"**8-1005. Prosecution for driving while under influence of intoxicating liquor; evidence of alcohol in blood; presumptions.** (*a*) In any criminal prosecution for violation of the laws of this state relating to *driving* of a motor vehicle while under the influence of intoxicating liquor, or the commission of vehicular homicide or manslaughter while under the influence of intoxicating liquor, or in any prosecution for a violation of city ordinance relating to the *driving* of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the defendant's blood at the time alleged, as shown by chemical analysis of the defendant's blood, urine, breath or other bodily substance may be admitted and shall give rise to the following presumptions:

"(1) If there was at that time less than 0.10 percent by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor;

"(2) If there was at the time 0.10 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor." (Emphasis supplied.)

K.S.A. 1979 Supp. 8-1001 provides in part:

"**8-1001. Consent to submit to chemical test deemed given, when; authority to withdraw blood; administration of test; procedure upon refusal to submit to test; notice; hearing; suspension of license, permit or operating privileges.** (*a*) Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given consent to submit to a chemical test of breath or blood, for the purpose of determining the alcoholic content of his or her blood whenever he or she shall be arrested or otherwise taken into custody for any offense

involving *operating* a motor vehicle under the influence of intoxicating liquor in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to arrest the person was *driving* under the influence of intoxicating liquor. The test shall be administered at the direction of the arresting officer.

. . . .

"*(c)* If the person so arrested refuses a request to submit to a test of breath or blood, it shall not be given and the arresting officer shall make to the division of vehicles of the state department of revenue a sworn report of the refusal, stating that prior to the arrest the officer had reasonable grounds to believe that the person was *driving* under the influence of intoxicating liquor." (Emphasis supplied.)

## K.S.A. 1979 Supp. 8-285 provides in part as follows:

"**8-285. Definitions.** As used in this act, the words and phrases defined in K.S.A. 8-234 shall have the meanings ascribed to them therein, and the term 'habitual violator' shall mean any resident or nonresident person who, within the immediately preceding five (5) years, has been convicted in this or any other state:

"*(a)* Three (3) or more times of: .

. . . .

"(2) *Driving while under the influence of intoxicating liquor or drugs, as prohibited by K.S.A. 1977 Supp. 8-1567,* or as prohibited by an ordinance of any city in this state or by any law of another state, which ordinance or law declares to be unlawful the acts prohibited by said statute . . . ." (Emphasis supplied.)

## K.S.A. 8-1212 provides in part as follows:

"**8-1212. Driver license compact.**

. . . .

"Article IV.—*Effect of Conviction*

"*(a)* The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to article III of this compact, as it would if such conduct had occurred in the home state, in the case of convictions for:

"(1) Manslaughter or negligent homicide resulting from the operation of a motor vehicle;

"(2) *Driving* a motor vehicle while under the influence of intoxicating liquor or a narcotic drug, or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle . . . ." (Emphasis supplied.)

The language used in the above statutes should be carefully noted. K.S.A. 1979 Supp. 8-1005, which deals with the subject of blood alcohol tests, refers to "criminal prosecution for violation of the laws of this state relating to *driving* of a motor vehicle while under the influence of an intoxicating liquor." This section was last amended in 1976. K.S.A. 1979 Supp. 8-1001 has to do

with the consent of the operator of the vehicle to submit to a chemical test of breath or blood, to determine the alcoholic content of his blood. In 8-1001 the word "operating" is used but it should be noted that consent to taking a blood sample is presumed provided the arresting officer has reason to believe that the person was *driving* under the influence of intoxicating liquor. It seems obvious that, as used in that statute, the words "operating" and "driving" are synonymous terms. Turning to K.S.A. 1979 Supp. 8-285, the term "habitual violator" is defined as any person who, within the immediately preceding five years, has been convicted in this or any other state three or more times of, among other things, *driving* while under the influence of an intoxicating liquor or drugs *as prohibited by K.S.A. 1979 Supp. 8-1567.* There is clearly an explicit recognition that the offense prohibited by 8-1567 is *driving* while under the influence of intoxicating liquor or drugs.

K.S.A. 8-1212, quoted above, is the driver's license compact entered into by this state along with other jurisdictions. It declares, in effect, that convictions for *"[d]riving* a motor vehicle while under the influence of intoxicating liquor or a narcotic drug" in other states is given the same effect as if such conduct had occurred in this state. Again it should be noted that the reference in the compact is to *driving* a motor vehicle while under the influence of intoxicating liquor not *operating* a vehicle. In addition, there are other sections of the Uniform Act Regulating Traffic on Highways where the terms *operating* and *driving* are obviously used interchangeably. For example see K.S.A. 8-1561(*a*) and K.S.A. 8-1562. See also K.S.A. 8-1906 which has to do with the subject of securing loads on vehicles. Section (*a*) declares that no vehicle shall be *driven* or *moved* unless such vehicle is so constructed or loaded as to prevent any of its load from dropping. Section (*b*) provides that no person shall *operate* any vehicle unless the load or any covering thereon is securely fastened. It seems obvious that the words "driven or moved" and "operated" are used interchangeably.

We also think it important to consider Chapter 50, Laws of 1976, which is the latest enactment of the legislature which amends K.S.A. 8-1567. Section (1) of Chapter 50 makes it unlawful and punishable for any person who is under the influence of intoxicating liquor to *operate* any vehicle within this state. The

title of Senate Bill No. 857 (which became Chapter 50) declares that it is "An act concerning the uniform act regulating traffic on highways relating to the offense of *driving* while intoxicated; amending K.S.A. 8-1567, and repealing the existing section." Thus, in the title of the bill which enacted K.S.A. 1979 Supp. 8-1567, the offense proscribed is described as "*driving* while intoxicated." It is difficult to see how the legislative intent could be more clearly expressed.

From this analysis of K.S.A. 1979 Supp. 8-1567 and other sections of the Uniform Act Regulating Traffic on Highways, we have concluded that the word "*operate*" as used in section (*a*) of that statute should be construed to mean "*drive*," thus requiring some evidence, either direct or circumstantial, that the defendant drove the automobile while intoxicated in order for the defendant to be convicted under that section. Proof of driving does not require an eyewitness to the driving. It may be shown by circumstantial evidence as was done in *State v. Dill,* 182 Kan. 174, and *State. v. Hazen,* 176 Kan. 594.

For the reasons set forth above, it is the judgment of the court that the appeal of the State on the question reserved is not sustained.